Marsh v. Dodge.

---

JAMES S. MARSH, Appellant, *v.* JOHN A. DODGE et al., Respondents.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1872.)

In an action on an agreement to pay a royalty on sales of patented implements, and to account for sales made or implements disposed of,—*Held*, that the manufacture and shipment of the implements from the defendants' factory was *prima facie* evidence of their sale.

The defendant proved a supplemental agreement, not mentioned in the pleadings, which upon proof of other facts would have reduced the recovery, no pretence of having been misled or injured being made.—*Held*, that a nonsuit on the ground of variance was error.

MOTION by plaintiff for a new trial, upon nonsuit at Cayuga Circuit; exceptions ordered to be heard in the first instance at the General Term. The facts are stated in the opinion.

*Rollin Tracy*, for the plaintiff.

*H. V. Howland*, for the defendants.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—TALCOTT, J. This action was brought to recover license fees alleged to have accrued on a license whereby the plaintiff, being the patentee of certain improvements on harvesting machines, known as "Marsh's Self-rake," granted to the defendants the privilege of making, using and vending the said implement. By the agreement containing the license, the defendants agree to pay the plaintiff ten dollars upon each of said self-rakes "that shall be made, and sold or disposed of by the said Dodge, Stevenson & Company (the defendants), or by their authority or procurement during the time aforesaid. Payment of the aforesaid sum of ten dollars, on each of said self-rakes, to be made on the 1st day of January, in each and every year;" and by the same agreement the defendants agreed to render "a true and faithful account, on the 1st day of January, in each and every year thereafter, of all the said self-rakes sold or disposed of by them, or by their procurement or authority, during the year preceding the said first day."

This agreement was dated in September, 1865, and was executed by both parties, under seal, on the same day and simultaneously with the execution of the above-mentioned license and agreement, the parties executed another instrument, but without seal, reciting the granting of the license on that day, whereby the plaintiff, in consideration of one dollar, "and certain valuable work in the matter of introducing said improvements to public notice," agreed to allow a drawback of three dollars on each self-rake made and sold by the defendants and attached to machines other than what were known as "Marsh's Self-rake Harvester."

And it was further agreed that "for all the machines known as the "Ohio Ball's Patent," that may adopt and use the Marsh rake, the defendants "were to receive one dollar and

Marsh *v.* Dodge.

fifty cents from any money that may be due on said license from James S. Marsh to said Dodge, Stevenson & Co."

And it was further agreed that in the event that Marsh should grant any license for the use of his rake for a less sum than ten dollars, then a corresponding deduction should be made to the defendants.

In his complaint the plaintiff set forth the first-mentioned license and agreement, but took no notice of the other agreement. He alleged that the defendants had failed to render any account or to pay any license fees, and that the defendants had made and sold under the license six hundred of the said rakes since the granting of the license, for which they had paid nothing and rendered no account. The answer was a general denial, together with allegations denying the validity of the plaintiff's letters patent. The defendants did not set up in their answer the further agreement, or aver any facts upon which they claimed any deduction from the fee of ten dollars under the provisions of the further agreement.

On the trial, the plaintiff, after proving his letters patent and the agreement set out in his complaint, gave evidence tending to show that the defendants were manufacturers at Auburn, and that at their works at that place they had manufactured and sent off between six hundred and seven hundred of these rakes in the fall and winter of 1865 and 1866. It did not appear where or to whom these had been sent, or under what arrangement or circumstances; but as we understand the case, they were sent somewhere, away from Auburn. It further appeared that afterward a large portion of these rakes so sent away came back, but how many, from whom or for what reason or purpose did not appear. After the plaintiff rested, the defendants proved the execution of the further agreement, but made no attempt to give any account of the rakes which they had manufactured, and no explanation of the circumstances under which they were sent off or came back.

Upon this state of the evidence the defendants moved for a nonsuit upon the following grounds, viz.:

Marsh *v.* Dodge.

"1st. That there is a material variance between the contract declared upon and the contract as proved.

"2d. On the ground that the plaintiff had proved no sale of the property under the contract upon which he has declared."

These are the only grounds now suggested by the defendants' counsel. The court granted the nonsuit and the plaintiff excepted. The nonsuit was clearly erroneous. If the further agreement is to be considered and construed as a part of the original agreement, this is so only for the purpose of controlling the rights of the parties under the two agreements taken together. The plaintiff proved his agreement, under seal, precisely as he had alleged it. The proof of the further agreement, at most, could only entitle the defendants to the deductions specified in that agreement, provided they had shown the facts entitling them to the deduction. If it had been a technical variance it should have been disregarded, as there is no pretence that the defendants could have been, in any way, misled or injured. We apprehend that the nonsuit was, in fact, granted on the other point, which we think also erroneous. The defendants were to keep and render a faithful and true account of the rakes sold or disposed of by them. They do not pretend to have rendered any account. The most the plaintiff could be expected to do was to give general evidence tending to show that the defendants had, in fact, made and disposed of some of the rakes. We think the evidence given by the plaintiff, showing a large number of these rakes made by the defendants and sent away from their factory, was sufficient *prima facie* to call upon the defendants for an explanation, and the account they had covenanted to keep and render.

If the proof that many of the machines came back was of any effect at all, without further explanation, it certainly was an answer only to such of them as did come back.

The nonsuit must be set aside and a new trial granted, costs to abide the event.